**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-1170

_____

UNITED STATES OF AMERICA

v.

C. TATE GEORGE,
                              Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-12-cr-00204-001)
District Judge: Honorable Mary L. Cooper

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 9, 2017

Before: HARDIMAN, KRAUSE, *Circuit Judges*, and STENGEL, *District Judge*.[*]

(Opinion Filed:  April 5, 2017)

_____

OPINION[**]

_____

_____

[*] The Honorable Lawrence F. Stengel, United States District Court for the Eastern
District of Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

C. Tate George appeals his judgment of conviction and sentence. Because all of his challenges fail under the relevant standards of review, we will affirm.

I

On March 23, 2012, George was indicted on four counts of wire fraud under 18 U.S.C. § 1343 in connection with a Ponzi scheme he conducted under the auspices of The George Group, LLC. From 2005 to 2011, George raised about $3.4 million by falsely representing to investors that their money would be used for real estate development projects and by misrepresenting his portfolio and activities.

Instead of using the funds raised as promised, George diverted them to pay his own personal expenses and to return principal and interest to existing investors. George's fraud was exposed when he became unable to make required payments and failed to pursue most of the projects he had promised.

The Government identified 22 victims of George's scheme and pegged their actual losses at around $2.5 million. After trial testimony from several victims and extensive Government exhibits tracing his financial records, George was convicted on all counts. The District Court sentenced him to 108 months' imprisonment followed by three years' supervised release and restitution of $2,550,507.28.

II[1]

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

2

George raises four principal arguments on appeal: (1) the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963); (2) the FBI testimony against him included perjury; (3) newly discovered evidence warranted a new trial; and (4) his United States Sentencing Guidelines (USSG) range was calculated improperly. We address each argument in turn.

A

George first argues that the Government violated *Brady* by withholding two types of potentially exculpatory evidence: (1) the fourth page of his "Master Participation Agreement" and (2) information obtained from his bank accounts on "unreadable" disks. George Br. 4; *see also* George Br. 8. Neither type of evidence violated *Brady*.

The Master Participation Agreement was not *Brady* material for two simple reasons. First, it was George's own contract which he introduced as an exhibit at trial— and his exhibit contained only the same three pages the Government later used. Moreover, as the District Court noted, the document was inculpatory, not exculpatory. *See, e.g.*, *Lambert v. Blackwell*, 387 F.3d 210, 252–53 (3d Cir. 2004) (evidence must be "favorable" and "material"—reasonably likely to change result of proceeding).

As for George's bank account information, the factual premises of his *Brady* argument—that the evidence was unreadable and exculpatory—are also fallacious. The District Court rejected the idea that the disks were unreadable. One of George's former attorneys had the passwords for his bank records, and the Government "never blocked

any evidence [or] failed to live up to its discovery obligations [] in a timely manner." Supp. App. 3634. Not only did the information on the disks consist of George's own bank accounts (to which he had access), they too were used to prove his guilt, so they did not constitute *Brady* material.

B

George also claims he was the victim of Government perjury. The District Court rejected this argument and its decision to do so was not clearly erroneous. *See, e.g.*, *United States v. Hoffecker*, 530 F.3d 137, 183 (3d Cir. 2008).

According to George, FBI Agent Bradley testified at sentencing that the Government did not conduct "a formal investigation of any" of George's "books, records, or bank accounts," George Br. 5, which meant that the financial evidence offered against him at trial, including the charts depicting his bank activity, must have been "falsely contrived." George Br. 7. George mischaracterizes Agent Bradley's testimony.

During his pro se cross-examination of Agent Bradley, George asked whether the Government looked at bank records regarding a particular sum of money. Bradley responded that if that amount had been in one of George's accounts obtained during discovery, the FBI "did probably analyze" it. Supp. App. 2738. Despite this testimony, George argued that the Government had not conducted "an investigation on how and why the money was spent." Supp. App. 2739. The District Court disagreed, finding that the witness said merely that "if there are bank records" showing the amount in question was "available to developers or investors[,] then [the FBI] would have looked at those

4

records." Supp. App. 2740. Accordingly, George erroneously claims that Bradley "admitted on the witness stand that there had been no governmental investigation of any bank statements pertaining to [the supposed development] projects at the time of trial." George Br. 7.

Not only did the District Court reject this claim at sentencing, but Bradley asserted multiple times that the FBI conducted a thorough pre-trial investigation. *See, e.g.*, Supp. App. 2682 (Bradley testifying that the FBI "created [the] charts from bank records," disagreeing with the claim that they were "made up"); Supp. App. 2693, 2698 (testifying charts were based on an investigation into George's bank records); Supp. App. 3037 (rejecting idea that the pre-trial investigation was "very limited"). The District Court did not clearly err when it found no perjury.

C

George next argues that a new trial is appropriate because the "forensic accounting report" he created for sentencing with the Court's permission "proved that there [were] no victim losses" or "fraud." George Br. 9. According to George, his report "verified that all expenses of the George Group were legitimate and that there was no criminal fraud[.]" George Supp. Br. 7.

George's report does not qualify as new evidence under Federal Rule of Criminal Procedure 33. First, it simply restates previously available information by summarizing George's (disproven) contentions at trial. As the District Court rightly noted, "all of the evidence to which Mr. George now points [in the report] was either available to him and

5

the defense side before trial or easily available with reasonable diligence because it was all evidence of his business dealings." Supp. App. 2504. Therefore, this "evidence" was not "newly discovered." *See United States v. Napolitan*, 762 F.3d 297, 305 (3d Cir. 2014).

Second, the report is cumulative of points George already made at trial insofar as it "essentially attempts to sum up . . . what Mr. George would have wanted the jury to believe from his point of view." Supp. App. 2504. The report does not prove an absence of victims or fraud, as he claims; rather, it summarizes his previous contentions to that effect. Such cumulative evidence did not warrant a new trial. *Napolitan*, 762 F.3d at 305.

Finally, the Court found that the report would not have been admissible at trial in any event because it "utterly failed to render any forensic accounting." Supp. App. 3457; *see also* Supp. App. 2501 ("The report . . . is certainly not admissible in evidence."). The report's inadmissibility is yet another reason it did not qualify as new evidence warranting a new trial. *See Napolitan*, 762 F.3d at 305.

### D

Finally, George contends that the District Court incorrectly calculated his Guidelines range. He claims that the 2-level enhancement for perjury was unjustified and the 20-level enhancement for victim hardship and financial loss was unsupported by the evidence. We review these factual findings by the District Court for clear error. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007).

6

The enhancement for perjury was proper because George testified falsely at trial. He "very, very adamant[ly]" "made material misrepresentations" with respect to his authority to use investors' money. Supp. App. 3531. Some of his assertions at trial were "irreconcilably . . . at odds with what the jury necessarily found in the verdicts." *Id.* Because the District Court was bound "to accept the facts necessarily implicit in the verdict," *United States v. Johnson*, 302 F.3d 139, 154 (3d Cir. 2002) (citation omitted), it properly found that George lied when he testified contrary to those facts. For example, the jury found that George used investment money for unauthorized purposes, so George's protestations to the contrary had to be rejected by the Court. The Court carefully explained its reasoning and correctly applied USSG § 3C1.1 & app. n.4(B) to increase George's Guidelines range by two levels.

We also conclude that the enhancement for the financial loss of his victims was appropriate. The District Court thoroughly reviewed the facts of record to determine the total loss to victims was $2,550,507.28. Amount of loss need only be "found by a preponderance of the evidence" at sentencing, and a "reasonable estimate" is sufficient. *United States v. Ali*, 508 F.3d 136, 145 (3d Cir. 2007) (quoting USSG § 2B1.1 app. n.3(C)) (other citation omitted). George's sole basis for objecting to the $2.5 million loss amount (and the corresponding hardship to victims) is his unreliable sentencing report. That report cannot overcome the District Court's detailed findings with respect to the loss and the financial hardship that befell his victims. Supp. App. 3462–66 ("[T]he government's proofs as to this four-level enhancement are unassailable and not refuted []

7

by anything the defendant presented at this hearing." *Id.* at 3462.). The loss amount properly supported a 16-level enhancement under USSG § 2B1.1(b)(1)(I), and the hardship to five or more victims correctly enhanced his range by four more levels, *id.* § 2B1.1(b)(2)(B).

III

We have considered George's other miscellaneous arguments and find them to be without merit. Accordingly, we will affirm his judgment of conviction and sentence.